David C. Wakefield, Esq.    Bar #: 185736
Law Offices of David C. Wakefield
10620 Treena Street, Suite 230
San Diego, CA 92131
Telephone:  619.241.7112; Facsimile:  619.342.7755
E-mail:     dcw@DMWakeLaw.com
            dcwlawoffice@gmail.com

Attorney for Plaintiff

,

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| ROY DAVIS GASH, | **Case#:**    '16CV2705 AJB  MDD |
|---|---|
| Plaintiff, | **COMPLAINT** |
| v. | DISCRIMINATORY PRACTICES IN PUBLIC ACCOMMODATIONS [42 U.S. C. §12182(a) ET. SEQ; CA CIVIL CODE 51, 52, 54, 54.1, 54.3, CA Gov Code § 12955 et. seq.] |
| ESSEX PROPERTY TRUST, INC.; LISA BARKER, Manager, Vista Capri North Apartments; AND DOES 1 THROUGH 10, Inclusive | US Fair Housing Act of 1988 [42 U.S.C. §§ 3600 et seq, §3604(c), §3604(f)(1-3), Et Seq.] |
| Defendants. | DEMAND FOR JURY TRIAL |

## INTRODUCTION

1.      Plaintiff Roy Gash herein complains, by filing this Civil Complaint in accordance with rules of Civil Procedure within this court that Defendants have in the past, and presently are, engaging in discriminatory practices against individuals with disabilities. Therefore, Plaintiff makes the following allegations in this civil

1

rights action:

2.     The property that is the subject of this action is located in San Diego County.

3.     The federal jurisdiction of this action is based on 42 U.S.C. 12101 Et. Seq. and 42 U.S.C. §§ 3600 et seq.  Venue in the Judicial District of the United States District Court of the Southern District of California is in accordance with 28 U.S.C. § 1391(b) because a substantial part of Plaintiff's claims arose within and the subject property lies within the Judicial District of the United States District Court of the Southern District of California.

## SUPPLEMENTAL JURISDICTION

4.     The Judicial District of the United States District Court of the Southern District of California has supplemental jurisdiction over the state claims as alleged in this Complaint pursuant to 28 U.S.C. § 1367(a).  The reason supplemental jurisdiction is proper in this action is because all the causes of action or claims derived from federal law and those arising under state law, as herein alleged, arose from common nucleus of operative facts.  The common nucleus of operative facts, include, but are not limited to, the incidents where Plaintiff was denied full and equal access to Defendants' goods, and/or services in violation of both federal and state laws when he attempted to enter, use, and/or exit Defendants' services as described within paragraphs 9 through 17 of this Complaint.  Further, due to this denial of full and equal access, Plaintiff Roy Gash and other individuals with disabilities were injured.  Based upon said allegations, the California causes of actions, as stated herein, are so related to the Federal claims that they form part of the same case or controversy, and the actions would ordinarily be expected to be tried in one judicial proceeding.

COMPLAINT
CASE #

NAMED DEFENDANTS AND NAMED PLAINTIFF

5.     Defendants are, and, at all times mentioned herein, were, a business or corporation or franchise organized and existing and/or doing business under the laws of the State of California.    Plaintiff is informed and believes and thereon alleges that Defendant ESSEX PROPERTY TRUST, INC.; LISA BARKER, Manager, Vista Capri North Apartments is the operator of the business known as Vista Capri North Apartments located at 3277 Berger Ave, San Diego, CA 92123.  Plaintiff is informed and believes and thereon alleges that Defendant ESSEX PROPERTY TRUST, INC.; LISA BARKER, Manager, Vista Capri North Apartments is the owner, operator, and/or lessor of the real property located at 3277 Berger Ave, San Diego, CA 92123.

6.     The words Plaintiffs and Plaintiff as used herein specifically include Roy Gash.

7.     Defendants Does 1 through 10, were at all times relevant herein subsidiaries, employers, employees, and/or agents of ESSEX PROPERTY TRUST, INC.; LISA BARKER, Manager, Vista Capri North Apartments. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1 through 10, inclusive, and therefore sues these Defendants by such fictitious names.  Plaintiff will pray leave of the court to amend this complaint to allege the true names and capacities of the Does when ascertained.

8.     Plaintiff is informed and believes and thereon alleges, that Defendants and each of them herein were, at all times relevant to the action, the owner, lessor, lessee, franchiser, franchisee, general partner, limited partner, agent, employee, representing partner, or joint venturer of the remaining Defendants and were acting within the course and scope of that relationship. Plaintiff is further informed and believes, and thereon alleges, that each of the Defendants herein gave consent to, ratified, and/or authorized the acts alleged herein to each of the remaining Defendants.

3

COMPLAINT
CASE #

## CONCISE SET OF FACTS

9.     Plaintiff Roy Gash ("GASH") has physical impairments and due to these impairments he has learned to successfully operate a wheelchair for mobility. Plaintiff ROY GASH said physical impairments substantially limit one or more of the following major life activities including but not limited to: walking.  Plaintiff ROY GASH is unable to walk any distance.  Plaintiff ROY GASH also suffers limited range of motion in his upper body and arms as a result of his paralysis symptoms.    Plaintiff Roy Gash also has profound hearing loss in both ears.

10.     On or about September 2016, Plaintiff Roy Gash physically went to Defendants' public accommodation facilities, to utilize their goods and/or services. At all times relevant to this action, Plaintiff Roy Gash was and remains a consumer renter of residential property and went to the Defendants' subject property to obtain an application to lease a rental unit at the leasing office.  On or about September 2016, Plaintiff Roy Gash attempted to use the internet to determine the availability of rental units at the property for Plaintiff to rent and the accessibility of the facilities such as the rental office, common areas, and rental units.  Plaintiff Roy Gash also determined from Defendant's internet advertisements that Defendant's failed to comply with FHA requirements regarding advertising, statements and notices for persons with disabilities as stated below.  Plaintiff Roy Gash physically went to the property to obtain a lease application from the leasing/rental office on the property, to lease a rental unit for residential purposes, and to determine if the general accessibility of the property would be accessible to Plaintiff if he were to successfully obtain a rental unit. When Plaintiff ROY GASH patronized Defendants' facilities, he was denied equal access to and had difficulty using the public accommodations' facilities since Defendants' facilities failed to comply with Americans With Disabilities Act Accessibility Guidelines ("ADAAG", codified at

4

28 CFR Part 36, Appendix A), and California's Title 24 Building Code Requirements. Defendants failed to remove barriers to equal access within their public accommodation facilities. Plaintiff Roy Gash personally experienced difficulty with said barriers to equal access that relate to his disabilities at Defendants' facilities.  Defendant's leasing or rental office facilities are a public accommodation under ADA Title III as well as the parking serving the leasing office, exterior path of travel to from the parking to said leasing office, exterior path of travel from other public entryways onto the property leading to the leasing office, the leasing office entrance, leasing office, and the common area facilities. The examples listed below of known barriers to equal access are not an exhaustive list of the barriers to equal access that relate to Plaintiffs disabilities that exist at Defendants' facilities.

11.      For example, the access barriers personally experienced by Plaintiff Gash that relate to his disabilities include, but are not limited to, the following: Defendants have a rental office on the Apartment property.  Defendants Apartment complex has more than the required 4 residential units.  Defendants failed to provide compliant disabled parking. Defendants parking facilities failed to provide the required compliant Van Accessible disabled parking space or regular disabled parking space. Plaintiff Gash requires the use of a compliant van accessible disable parking space to safely exit and re-enter his vehicle.  Defendants' failure to provide the required compliant disabled parking and also disabled parking disability signage caused Plaintiff Gash great difficulty in safely parking at Defendants' establishment since Gash may be precluded from exiting or re-entering his vehicle if the disabled parking and disabled parking signage is not present and others park improperly.  Defendants failed to provide the required van accessible disabled parking space with correct dimensions and an access aisle of the required width and length.  Defendants failed

5

to provide the required disabled parking signage, and tow-away signage, Defendants failed to provide the required $250 tow away signage.  Plaintiff Gash also personnally experienced problems with Defendant's failure to provide an accessible exterior path of travel to the rental office which caused Gash great difficulty in safely traveling in his wheelchair to the rental office entrance.  Defendants' rental office entrance is not accessible since the office entrance door threshold is too high and consists of a step change in level at the entrance door threshold.  Defendant's office entrance door was not accessible since the entrance door knob is round and not accessible.

12.     Plaintiff can prove these barriers exist since Plaintiff confirmed the access barriers at Defendants' facility.  Plaintiff specifically alleges that Defendants knew, to a substantial certainty, that the architectural barriers precluded wheelchair access. First, Plaintiff will prove that Defendants had actual knowledge that the architectural barriers precluded wheelchair access and that the noncompliance with ADAAG and Title 24 of the California Building Code as to accessible features was intentional.

13.     Second, due to the abundance of disability rights information and constant news coverage of disability discrimination lawsuits, Defendants had actual knowledge of the state disability laws and ADAAG access requirements and decided deliberately not to remove architectural barriers.  Plaintiff alleges any alternative methods preclude integration of wheelchair patrons, as it requires them to use second-class facilities.  Also, expert testimony will show the facility contained inaccessible features.

14.     Plaintiff ROY GASH intends to return to Defendants' public accommodation facilities in the immediate future.  Plaintiff Roy Gash is a consumer of residential rental apartments.  On the date stated above, Plaintiff Roy Gash physically went to the Defendant's subject property leasing office to obtain a rental application and to

6

COMPLAINT
CASE #

make inquiries as to leasing terms.  Plaintiff Roy Gash personally experienced the barriers to access barriers.  Plaintiff Roy Gash also alleges that he was specifically deterred on specific dates thereafter due to his knowledge of the barriers to equal access that exist at Defendants' facilities that relate to Gash's disabilities. Additionally, Plaintiff ROY GASH is presently deterred from returning due to his knowledge of the barriers to equal access that exist at Defendants' facilities that relate to his disabilities.  Plaintiff ROY GASH travels frequently in the immediate area of Defendant's facilities.  Additionally, Plaintiff Roy Gash frequently patronizes retail businesses and locations in the immediate vicinity of Defendant's facilities. Finally, Plaintiff Roy Gash intends to return to the property, on the conclusion of the present action to verify, at that time, that the barriers to access have been removed, that the property is accessible at that time, and to obtain rental applications and leasing information.

15.  Plaintiff ROY GASH has actual personal standing in the present matter as he personally experienced barriers to access at the subject property as demonstrated above.  However, as an alternative, second, and wholly separate basis for standing from his already existing standing from personally experiencing the barriers, Plaintiff ROY GASH urges this Court to adopt the Federal 11th Circuit Court of Appeal's *Houston* holding – [We hold that Plaintiff Houston's tester motive behind his visits to the Presidente Supermarket does not foreclose standing for her claim under 42 U.S.C. §§ 12182(a), 12182(b)(2)(A)(iv), and 12188(a)(1) of Title III. By the same token, we conclude that "bona fide patron" status is a not a prerequisite for Houston to obtain standing for a lawsuit under these statutory provisions. Stated differently, the alleged violations of Houston's statutory rights under Title III may constitute an injury-in-fact, even though she is a mere tester of ADA compliance"].  *Houston v. Marod Supermarkets, Inc., 733 F. 3d 1323 (11th Cir. 2013)*.  Plaintiff ROY GASH is a long time advocate of disability rights.  Therefore, ROY GASH wants to make sure

7

that all public accommodation places that he personally visits are accessible. Furthermore, Plaintiff ROY GASH wants to enjoy Defendants' leasing office facilities without experiencing prohibited restrictions and discrimination.  Plaintiff Roy Gash also has the concrete plans to return to Defendants property as stated previously above and also at the conclusion of this matter.  Plaintiff alleges that three Federal Circuit Courts of Appeal have adopted the *Houston v. Marod Supermarkets, Inc* courts reasoning.  See *Tandy v. City of Wichita,* 380 F.3d 1277 (10th Cir.2004), [Testor had tester standing suing under ADA § 12132]; *Colorado Cross–Disability Coalition v Abercrombie & Fitch Co.*, 765 F.3d 1205 (10th Cir, 2014) [Tester had tester standing suing under ADA Title III].  Plaintiff Roy Gash has a good faith belief that the present Ninth Circuit Court of Appeals should and would adopt and extend existing case law for ADA Title III plaintiff standing under this tester standard.

16.     Pursuant to state law and federal ADAAG access requirements, Defendants are required to remove barriers to their existing facilities.  Further, Defendants had actual knowledge of their access barrier removal duties under the state disability laws.  Also, Defendants should have known that individuals with disabilities are not required to give notice to a governmental agency before filing suit alleging Defendants failed to remove architectural barriers to access.

17.     Plaintiff is informed, believes and herein alleges Defendants' facilities have access violations not directly experienced by Plaintiff ROY GASH but are related to his disability that would preclude or limit equal access by CROSS, potentially including but not limited to violations of the ADAAG and Title 24 of the California Building Code.

18.     Based on these facts and other facts elsewhere in this complaint, Plaintiff alleges he was discriminated against each time he patronized Defendants' facilities.

8

NOTICE

19.    Plaintiff is not required to provide notice to the defendants prior to filing a complaint.   Skaff v Meridien N. Am. Beverly Hills, LLC, 506 F.3d 832 (9th Cir. 2007), see also, Botosan v. Paul McNally Realty, 216 F.3d 827, 832 (9th Cir 2000).

WHAT CLAIMS PLAINTIFF IS ALLEGING AGAINST EACH NAMED DEFENDANT

20.    ESSEX PROPERTY TRUST, INC.; LISA BARKER, Manager, Vista Capri North Apartments; and Does 1 through 10 will be referred to collectively hereinafter as "Defendants."

21.    Plaintiff avers that the Defendants are liable for the following claims as alleged below:

DISCRIMINATORY PRACTICES IN PUBLIC ACCOMMODATIONS

FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS- Claims Under The Americans With Disabilities Act Of 1990

CLAIM I: Denial of Participation

22.    42 United States Code 12182(b) states, "It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." Based on the facts plead at ¶¶ 9 - 17 above and elsewhere in this complaint, Plaintiff is informed, believes, and thereon alleges that Defendants violated the said provision because Plaintiff could not participate in their advertising accommodations because said advertising failed to delineate what features of the property are physically accessible and what services are accessible.  Services include alternative methods of access other than removing physical barriers.

9

CLAIM II: <u>Participation in Unequal Benefit</u>

23.     42 United States Code 12182(b) states, "It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is no disabilities that attract them to go to their place of accommodation. Based on the facts plead at ¶¶ 9 - 17 above and elsewhere in this complaint, Plaintiff is informed, believes, and thereon alleges that Defendants violated said provision because the present Defendants do not offer users with disabilities any benefits that will help them decide to go to the place of accommodation. For example, providing physical access and service access is a very important benefit for people with disabilities. Even if the facilities are not completely physically accessible, the person with a disability may decide to go to the place if they provide greater service access. There is no way for a person with a disability to determine if Defendant's place offers service access without the disabled person going to their business to find out that they cannot physically access the facility and that there is also no service access.

CLAIM III: <u>Separate Benefit</u>

24.     42 United States Code 12182(b) states "It shall be discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others." Based on the facts plead at ¶¶ 9 - 17 above and

COMPLAINT
CASE #

elsewhere in this complaint, Plaintiff is informed, believes, and thereon alleges that Defendants violated the said provision since Defendants provide a benefit that is separate and unequal to people with disability by forcing them to go to their place of accommodation to determine if they are physically accessible and to determine if they are service accessible. Users without disabilities do not need to consider if they can access the place of accommodation when they look at Defendant's advertising. All they need to consider is if they want to go to the place by looking at the advertising, but users with disabilities must consider if the place is accessible by looking at the advertising or they need to go there to discover that the place is not accessible. Plaintiff could not determine from Defendant's advertising if Defendants' facility was accessible.

CLAIM IV: Integrated Settings

25.    42 United States Code 12182(b) states, "Goods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual." Based on the facts plead at ¶¶ 9 - 17 above and elsewhere in this complaint, Plaintiff is informed, believes, and thereon alleges that Defendants violated said provision since Plaintiff alleges that Defendant by failing to offer the alternative methods to physical access, the defendants failed to offer the goods or the services in the most integrated setting. For example, Defendant knew that the place of accommodation was not physically accessible but it failed to provide notice in their advertising, notices in the parking lot or otherwise on their premises, to allow people with disabilities to decide if they wanted to use the place by accepting the alternative methods.

CLAIM V: Administrative Methods

26.    42 United States Code 12182(b) states, "An individual or entity shall not, directly or through contractual or other arrangements, utilize standards or criteria or

COMPLAINT
CASE #

methods of administration—(i) that have the effect of discriminating on the basis of disability; or (ii) that perpetuate the discrimination of others who are subject to common administrative control." Based on the facts plead at ¶¶ 9 - 17 above and elsewhere in this complaint, Plaintiff is informed, believes, and thereon alleges that Defendants violated said provision since Defendants decided to open a business and invite the public for profit. Thus, Defendants agreed to comply with all federal and states laws related to their business. Defendants retained agents and/or employees for business administration including Civil Rights compliance. Thus, Defendants had administrative control over service access compliance. Plaintiff alleges based on information and belief that Defendants' services including alternative methods, auxiliary aids, and business services violate said section because Defendants failed to exercise control over their agents or employees as to ADA compliance.

CLAIM VI: <u>Screen Out</u>

27.     42 United States Code 12182(b) states, "...the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered;..." Based on the facts plead at ¶¶ 9 - 17 above and elsewhere in this complaint, Plaintiff is informed, believes, and thereon alleges that Defendants violated said provision.  Plaintiff alleges that the ADA was passed in 1990. It is alleged that one form of eliminating ADA discrimination is by removing architectural barriers if readily achievable. This claim relates to services even if some barriers cannot be removed or do not relate to physical barriers. Based on information and belief, Plaintiffs allege that Defendants failed to maintain policies to ensure their goods and services are fully accessible.

Defendant's failure screens out people with disabilities.

CLAIM VII: <u>Auxiliary Aids</u>

28.    42 United States Code 12182(b) states, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden;..." Based on the facts plead at ¶¶ 9 - 17 above and elsewhere in this complaint, Plaintiff is informed, believes, and thereon alleges that Defendants violated said provision. Plaintiff decided it would be a futile gesture to make an auxiliary aid request because Defendants completely failed to comply with the ADA based upon his going to Defendant's place to verify access to goods and services; notwithstanding that Defendants failed to remove architectural barriers.  Plaintiff alleges that when Defendants do not remove architectural barriers, Defendants still have the duty to offer auxiliary aids to provide access to the goods and services. Defendants failed to offer Plaintiff any auxiliary aids.

CLAIM VIII: <u>Communication Barriers</u>

29.    42 United States Code 12182(b) states, "a failure to remove…, and communication barriers that are structural in nature, in existing facilities, and where such removal is readily achievable." Based on the facts plead at ¶¶ 9 - 17 above and elsewhere in this complaint, Plaintiff is informed, believes, and thereon alleges that Defendants violated said provision. At Defendants' business there are communication barriers outside and inside the business. Plaintiff's sight is impaired. Therefore, Plaintiff needs structural communication to be able to access Defendants property.

13

CLAIM IX AGAINST ALL DEFENDANTS: <u>Denial Of Full And Equal Access</u>

30.     Based on the facts plead at ¶¶ 9 - 17 above and elsewhere in this complaint, Plaintiff ROY GASH was denied full and equal access to Defendants' goods, services, facilities, privileges, advantages, or accommodations.  Plaintiff alleges Defendants are a public accommodation owned, leased and/or operated by Defendants. Defendants' existing facilities and/or services failed to provide full and equal access to Defendants' facility as required by 42 U.S.C. § 12182(a).  Thus, Plaintiff ROY GASH was subjected to discrimination in violation of 42 United States Code 12182(b)(2)(A)(iv) and 42 U.S.C. § 12188 because Plaintiff ROY GASH was denied equal access to Defendants' existing facilities.

31.     Plaintiff ROY GASH has physical impairments as alleged in ¶ 9 above because his conditions affect one or more of the following body systems: neurological, musculoskeletal, special sense organs, and/or cardiovascular.  Further, Plaintiff Roy Gash's said physical impairments substantially limits one or more of the following major life activities:  walking, and limited range of motion in arms and hands.  In addition, Plaintiff ROY GASH cannot perform one or more of the said major life activities in the manner, speed, and duration when compared to the average person.  Moreover, Plaintiff Roy Gash has a history of or has been classified as having a physical impairment as required by 42 U.S.C. § 12102(2)(A).

CLAIM X AGAINST ALL DEFENDANTS: <u>Failure To Make Alterations In Such A Manner That The Altered Portions Of The Facility Are Readily Accessible And Usable By Individuals With Disabilities</u>

32.     Based on the facts plead at ¶¶ 9 - 17 above and elsewhere in this complaint, Plaintiff ROY GASH was denied full and equal access to Defendants' goods, services, facilities, privileges, advantages, or accommodations within a public accommodation owned, leased, and/or operated by Defendants. Defendants altered their facility in a manner that affects or could affect the usability of the facility or a

14

COMPLAINT
CASE #

part of the facility after January 26, 1992. In performing the alteration, Defendants failed to make the alteration in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, in violation of 42 U.S.C. §12183(a)(2).

33.    Additionally, Plaintiff is informed, believes and hereon alleges on information and belief, that the Defendants undertook an alteration that affects or could affect the usability of or access to an area of the facility containing a primary function after January 26, 1992. Defendants further failed to make the alterations in such a manner such that the facilities are readily accessible to the maximum extent feasible, and are usable by individuals with disabilities pursuant to 42 U.S.C. §12183(a)(2), including any of the following that may be applicable, i.e. the path of travel to the altered area, and the bathrooms, telephones, and drinking fountains serving the altered area.

34.    Pursuant to 42 U.S.C. §12183(a), this failure to make the alterations in a manner that, to the maximum extent feasible, are readily accessible to and usable by individuals with disabilities constitutes discrimination for purposes of 42 U.S.C. §12183(a).  Therefore, Defendants discriminated against Plaintiff in violation of 42 U.S.C. § 12182(a).

35.    Thus, Plaintiff ROY GASH was subjected to discrimination in violation of 42 U.S.C. § 12183(a), 42 U.S.C. §12182(a) and 42 U.S.C. §12188 because Plaintiff ROY GASH was denied equal access to Defendants' existing facilities.

CLAIM XI AGAINST ALL DEFENDANTS: Failure To Remove Architectural Barriers

36.    Based on the facts plead at ¶¶ 9 - 17 above and elsewhere in this complaint, Plaintiff ROY GASH was denied full and equal access to Defendants' goods, services, facilities, privileges, advantages, or accommodations within a public

15

accommodation owned, leased, and/or operated by Defendants.  Defendants failed to remove barriers as required by 42 U.S.C. § 12182(a).  Plaintiff is informed, believes, and thus alleges that architectural barriers which are structural in nature exist within the following physical elements of Defendants' facilities including but not limited to the disabled parking, exterior path of travel, and restroom facilities, as said facilities were not accessible because they failed to comply with the Federal ADA Accessibility Guidelines ("ADAAG") and California's Title 24 Building Code Requirements. Defendants failed to remove barriers to equal access within their public accommodation facilities.  Title III of the ADA requires places of public accommodation to remove architectural barriers that are structural in nature to existing facilities. [See, 42 United States Code 12182(b)(2)(A)(iv).]  Failure to remove such barriers and disparate treatment against a person who has a known association with a person with a disability are forms of discrimination.  [See 42 United States Code 12182(b)(2)(A)(iv).]  Thus, Plaintiff ROY GASH was subjected to discrimination in violation of 42 United States Code 12182(b)(2)(A)(iv) and 42 U.S.C. § 12188 because he was denied equal access to Defendants' existing facilities.

CLAIM XII AGAINST ALL DEFENDANTS: Failure To Modify Practices, Policies And Procedures

37.    Based on the facts plead at ¶¶ 9 - 17 above and elsewhere in this complaint, Defendants failed and refused to provide a reasonable alternative by modifying its practices, policies and procedures in that they failed to have a scheme, plan, or design to assist Plaintiff and/or others similarly situated in entering and utilizing Defendants' services, as required by 42 U.S.C. § 12188(a).  Defendants have known or should have known that Defendants had a duty to repair and maintain their property including accessible features since 1990.  Defendants have failed to do so in the past up to and including the present.  Plaintiff is also seeking an order requiring

16

the Defendants to undertake the require duty of maintaining and refurbishing the access features on a regular basis, i.e. once a year. In the present matter, Defendants failed to have a plan to maintain any potential accessible features in a usable condition.  Specifically, Defendants failed to have a policy to install and maintain accessible disabled parking dimensional striping, access aisles, signage, and exterior paths of travel.  Defendants failure to provide the required accessible parking is an on-going condition that requires future effort to maintain.  Defendants past and present failure to provide the required accessible parking features such as dimensionally correct parking spaces, access aisles, and disable parking signage is a result of Defendants' failure to have the required policy and procedures in place to maintain these features.  Additionally, Defendants failed to have a policy to install and maintain an exterior accessible route and exterior directional signage to the leasing office, failed to have a policy to install and maintain a leasing office entrance and interior that was accessible.   Thus, Plaintiff ROY GASH was subjected to discrimination in violation of 42 United States Code 12182(b)(2)(A)(iv) and 42 U.S.C. § 12188 because Plaintiff ROY GASH was denied equal access to Defendants' existing facilities. Based on the facts plead at ¶¶ 9 - 17 above of Plaintiff's First Cause Of Action above, and the facts elsewhere herein this complaint, Plaintiff will suffer irreparable harm unless Defendants are ordered to remove architectural, non-architectural, and communication barriers at Defendants' public accommodation.  Plaintiff alleges that Defendants' discriminatory conduct is capable of repetition, and this discriminatory repetition adversely impacts Plaintiff and a substantial segment of the disability community.  Plaintiff alleges there is a national public interest in requiring accessibility in places of public accommodation. Plaintiff has no adequate remedy at law to redress the discriminatory conduct of Defendants.  Plaintiff desires to return to Defendants' places of business in the

17

immediate future.  Accordingly, the Plaintiff alleges that a structural or mandatory injunction is necessary to enjoin compliance with federal civil rights laws enacted for the benefit of individuals with disabilities.

CLAIM XIII - Failure To Investigate And Maintain Accessible Features

38.     It is alleged that Defendants knowing failed to investigate ADA access compliance at the planning stage of opening the business or at the annual renewal of the business. At trial, Plaintiff shall prove Defendants entered a fee absolute or lease without considering ADA access at all, because they consciously decided they were exempted or they were in ADA physical access compliance because a local government approved the building plans for the property. It is alleged that Defendants reasoned that providing some limited form of physical access means providing full and equal access, and this is the explanation for their failure to investigate providing reasonable modifications, alternative methods or auxiliary aids and their failure to investigate removing communication barriers. However, as alleged herein, the ADA covers more than physical access. It is alleged that Defendants may have acquired their business in compliance. In the course of time, Defendants made repairs and administrative changes which violated ADA and its regulations. ADA Title III Regulations state, "Sec.36.211 Maintenance of accessible features.  (a) A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part. (b) This section does not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs." For the purposes of this part of this claim Plaintiff alleges Defendants mental state satisfied the second prong of intent - knowledge to a substantial certainty. Also, it is alleged Defendants exercised administrative control

18

COMPLAINT
CASE #

over third parties including architects, engineers, construction contractors, lawyers, management and employees as to the accessible features of the public accommodation. Accessible features include compliance with new construction and alteration access standards, readily achievable architectural and communication standards, and providing alternative methods, reasonable modifications.   The basis of this claim is that Defendants did and does not have a process to maintain prior existing and future accessible features. Further, it is alleged that even if Defendants currently install accessible features they will not maintain them in the future. Thus, Plaintiff alleges that Defendants intentionally failed to maintain accessible features they installed when the property was first constructed, or when the public accommodation was first opened, or when the property was remodeled.

39.    WHEREFORE, Plaintiff was injured and prays for judgment and other relief as hereinafter set forth.

## SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS - <u>CLAIMS UNDER CALIFORNIA ACCESSIBILITY LAWS</u>

CLAIM I: <u>Denial Of Full And Equal Access</u>

40.    Based on the facts plead at ¶¶ 9 - 17 above and elsewhere in this complaint, Plaintiff ROY GASH was denied full and equal access to Defendants' goods, services, facilities, privileges, advantages, or accommodations within a public accommodation owned, leased, and/or operated by Defendants as required by Civil Code Sections 54, 54.1, and specifically 54.1(d).  Defendants' facility violated state disability access laws, the ADAAG (codified at 28 CFR Part 36, Appendix A), and California's Title 24 Accessible Building Code by failing to provide equal access to Defendants' facilities to persons with disabilities. Plaintiff personally experienced access barriers listed above within paragraphs ¶¶ 9 – 17.

19

COMPLAINT
CASE #

41.     Defendants denied Plaintiff ROY GASH full and equal access to Defendants' facility. Thus, Plaintiff ROY GASH was subjected to discrimination pursuant to Civil Code §§ 54, 54.1, and 54.3 because Plaintiff ROY GASH was denied full, equal and safe access to Defendants' facility.

CLAIM II: <u>Failure To Modify Practices, Policies And Procedures</u>

42.     Based on the facts plead at ¶¶ 9 – 17 above and elsewhere herein this complaint, Defendants failed and refused to provide a reasonable alternative by modifying its practices, policies, and procedures in that they failed to have a scheme, plan, or design to assist Plaintiff and/or others similarly situated in entering and utilizing Defendants' services as required by Civil Code § 54.1.  Additionally, Defendants failed to have a plan to maintain any potential accessible features in a usable condition.  Thus, Plaintiff ROY GASH was subjected to discrimination in violation of Civil Code § 54.1.

CLAIM III: <u>Violation Of The Unruh Act</u>

43.     Based on the facts plead at ¶¶ 9 - 17 above and elsewhere herein this complaint and because Defendants violated the CA Civil Code § 51 by specifically failing to comply with Civil Code §51(f).  Defendants' facility violated state disability laws, the ADAAG (codified at 28 CFR Part 36, Appendix A), and California's Title 24 Accessible Building Code by failing to provide equal access to Defendants' facilities.  Defendants did and continue to discriminate against Plaintiff in violation of Civil Code §§ 51(f), and 52.

44.     Based on the facts plead at ¶¶ 9 – 17 above, Claims I, II, and III of Plaintiffs' First Cause Of Action above, and the facts elsewhere herein this complaint, Plaintiff will suffer irreparable harm unless Defendants are ordered to remove architectural, non-architectural, and communication barriers at Defendants' public accommodation.  Plaintiff alleges that Defendants' discriminatory conduct is capable of repetition, and this discriminatory repetition adversely impacts Plaintiff and a

COMPLAINT
CASE #

substantial segment of the disability community.  Plaintiff alleges there is a state public interest in requiring accessibility in places of public accommodation.  Plaintiff has no adequate remedy at law to redress the discriminatory conduct of Defendants. Plaintiff desires to return to Defendants' places of business in the immediate future. Accordingly, the Plaintiff alleges that a structural or mandatory injunction is necessary to enjoin compliance with state civil rights laws enacted for the benefit of individuals with disabilities.

45.    Wherefore, Plaintiff was injured, and prays for damages and other relief as hereinafter stated.

## Treble Damages Pursuant To Claims I, II, III Under The California Accessibility Laws

46.    Defendants, each of them respectively, at times prior to and including the day Plaintiff patronized Defendants' facilities, and continuing to the present time, knew that persons with physical disabilities were denied their rights of equal access to all portions of this public accommodation facility.  Despite such knowledge, Defendants, and each of them, failed and refused to take steps to comply with the applicable access statutes; and despite knowledge of the resulting problems and denial of civil rights thereby suffered by Plaintiff.  Defendants, and each of them, intentionally have failed and refused to take action to grant full and equal access to Plaintiff in the respects complained of hereinabove.  Defendants, and each of them, have carried out an intentional course of conduct of refusing to respond to, or correct complaints about, denial of disabled access and have refused to comply with their legal obligations to make Defendants' public accommodation facilities accessible pursuant to the ADAAG and Title 24 of the California Code of Regulations (also known as the California Building Code).  Such actions and continuing course of conduct by Defendants in conscious disregard of the rights and/or safety of Plaintiff

21

justify an award of treble damages pursuant to sections 52(a) and 54.3(a) of the California Civil Code.  The California Supreme Court has stated:  "…the statute provides for damages aside from any actual damages incurred by the plaintiff. 'Their sum is unquestionably a penalty which the law imposes, and which it directs shall be paid to the complaining party. ... [But], while the law has seen fit to declare that it shall be paid to the complaining party, it might as well have directed that it be paid into the common-school fund. The imposition is in its nature penal, having regard only to the fact that the law has been violated and its majesty outraged'." *Koire v Metro Car Wash (1985) 40 Cal.3d 24, 33-34* [citing its decision in *Orloff v. Los Angeles Turf Club (1947) 30 Cal.2d 110, 115*].

47.     Defendants, and each of their actions have also been oppressive to persons with physical disabilities including Plaintiff and have evidenced actual or implied malicious intent toward Plaintiff who has been denied the proper access to which he is entitled by law.  Further, Defendants and each of their refusals or omissions to correct these problems evidence disregard for the rights of Plaintiff.

48.     Plaintiff prays for an award of treble damages against Defendants, and each of them, pursuant to California Civil Code sections 52(a) and 54.3(a).

49.     Wherefore, Plaintiff was injured, and prays for damages and other relief as hereinafter stated.


THIRD CAUSE OF ACTION: Violation of the US Fair Housing Act

        Based on the facts plead at ¶¶ 9 - 17 above and elsewhere herein this complaint, Plaintiff Roy Gash suffered discrimination in violation of FHA sections 42 § 3604(c), and § 3604(f)(1- 3) as further detailed below.


CLAIM I:  Discrimination In Violation of 42 § 3604(f)(2)

50.     Based on the facts plead at ¶¶ 9 - 17 above and elsewhere herein this

22

complaint, Plaintiff Roy Gash suffered discrimination in violation of this FHA section.  The relevant FHA statute states it is unlawful to discriminate against <u>any person</u> in the terms, conditions, <u>or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling,</u> because of a handicap of that person… § 3604(f)(2) [emphasis added].   As previously stated, Plaintiff Roy Gash alleges he was a prospective renter.  ¶¶9 – 17 above.  However, Plaintiff Roy Gash is not required to have an interest in renting a particular property or dwelling to have standing.  *Smith v. Pacific Properties and Development Corp* at 1099 [ *Smith* court held <u>a disabled person does not have to have an interest in actually purchasing or renting a particular property or dwelling in order to allege a discriminatory violation to enforce the rights created by § 3604(f)(2)</u>].   In the instant case, Defendant's rental office located on the property is a "facility" in connection with the rental of a dwelling and the on-site rental services provided within the rental office fall within the FHA statute.  Plaintiff Roy Gash asserts that Defendant's failure to remove architectural barriers to gain access to Defendant's on-site rental office is a separate, independent, actionable violation of this FHA section § 3604(f)(2).  Plaintiff Roy Gash has alleged that Defendant failed to provide compliant disabled parking, failed to provide an accessible exterior path of travel to the rental office entrance, failed to provide an accessible rental office since the office entrance door threshold in too high to surmount in a wheelchair, the office entrance doorway too narrow to pass through, and the office entrance door operating hardware not accessible to open.  SAC ¶¶11.  The 9th Circuit *Smith* court has stated that the mere observation of overt architectural barriers is actionable.  *Smith* at 1104 ["To read an additional standing requirement into the statute beyond mere observation, however, ignores that many overtly discriminatory conditions, for example, lack of a ramped entryway, prohibit a disabled individual from forming the requisite intent or actual interest in renting or buying *for the very reason* that architectural barriers

prevent them from viewing the whole property in the first instance" (emphasis in original)]. The *Smith* case did not involve ADA Title III claims, yet the Ninth Circuit court found the Defendants liable under this FHA subsection. However, Plaintiff Roy Gash did not just allege that he observed Defendant's overt architectural barriers, but Roy Gash alleged that he personally experienced the barriers, and this caused his denial of equal access to Defendant's rental office facility and its rental services located therein. Defendant also discriminated against Roy Gash by failing to modify its practices and policies to provide access via other methods of access to its rental services provided within the rental office. Defendant's failure to remove the architectural barriers to access or to provide other methods of access to the rental office facility, and Defendant's provision of rental services constitutes the prohibited discrimination, separately and independently.

51.    Additionally, while not necessary to find primary liability directly within this FHA section as stated in paragraph 50 above, without reference to any other statute, Defendant's conduct is also prohibited under ADA Title III and constitutes a second, separate source of discrimination against Plaintiff Roy Gash in violation of FHA § 3604(f)(2). Plaintiff Roy Gash asserts that any discriminatory conduct in violation of ADA Title III, especially since it specifically involves the express reference to the rental office facilities and services, also constitutes prohibited "discrimination" under FHA § 3604(f)(2).

52.    Plaintiff Roy Gash suffered the injury of discriminatory conduct by Defendant and Roy Gash suffered damages as a result. Plaintiff Roy Gash seeks injunctive relief as well as damages, both of which are available under 42 USC § 3613(c). Even if its later determined that prospective injunctive relief is not available to Cross, Plaintiff Roy Gash is still permitted to recover damages. *Harris v Itzakhi*, 183 F.3d 1043, 1050 (9th Cir 1999) [During the appeal in *Harris* case, the plaintiff therein moved Three Thousand (3000) miles away and her injunctive claims became moot.

COMPLAINT
CASE #

However, Plaintiff's claim for the retrospective relief of damages were unaffected]. Plaintiff Roy Gash damage claims survive even if prospective relief is not available.

CLAIM II:  Discrimination In Violation of 42 § 3604(c) As To NSA

53.     Based on information, belief, and the facts plead at ¶¶ 9 – 17 above and elsewhere herein, Plaintiff Roy Gash herein alleges that Defendants caused Roy Gash to suffer the injury of discrimination since Defendants violated 42 U.S.C. §§ 3604 (c) with respect to its notices, statements, and advertisements ("NSA"). Plaintiff Roy Gash alleges that Defendants made, printed, or published, or caused to be made printed, or published notices, statements, or advertisements ("NSA") that suggest to an ordinary reader a preference to attract tenants without disabilities.

54.   In the present case, Defendant advertises the subject property on webs sites including, but not limited to, the following websites: apartments.com and forrent.com.

55.     Plaintiff Roy Gash alleges that the internet NSA is a primary method that potential renters learn information about the amenities offered at apartments and their policies practices and procedures.  Plaintiff Roy Gash alleges that Defendants existing advertisements on websites is directed toward persons who do not have disabilities. It is alleged that Defendants: made, printed, or published, or cause to be made, printed, or published any notice, statement, or advertisement,[1] with respect to the rental of a dwelling that discrimination based on handicap; discriminated in the rental, or to otherwise make unavailable or deny, a dwelling to any renter because of a handicap of—(A) that renter, (B) a person residing in or intending to reside in that dwelling after it is so rented, or made available; or (C) any person associated with

_____

[1] 24 CFR 100.75 - Discriminatory advertisements, statements and notices.

25

that renter; discriminated against any person in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—(A) that person; or (B) a person residing in or intending to reside in that dwelling after it is so rented, or made available; or  (C) any person associated with that person; discriminated by—(A) a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises except that, in the case of a rental, the landlord may where it is reasonable to do so condition permission for a modification on the renter agreeing to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted; (B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling. The FHA was passed in 1968 then amended in 1988 before the Internet was widely used. In the present day, landlords publish notices on the Internet. Plaintiff Roy Gash caused certain such notices to be downloaded and reviewed them. In the present case, none of Defendants' Internet advertising adhered to the guidelines within 24 CFR 109 or had the following:

> Equal Housing Opportunity Statement: We are pledged to the letter and spirit of U.S. policy for the achievement of equal housing opportunity throughout the Nation. We encourage and support an affirmative advertising and marketing program in which there are no barriers to obtaining housing because of race, color, religion, sex, handicap, familial status, or national origin.
>
> Equal Housing Opportunity Slogan: "Equal Housing Opportunity."
>
> Table III

COMPLAINT
CASE #

Illustration of Media Notice--Publisher's notice: All real estate advertised herein is subject to the Federal Fair Housing Act, which makes it illegal to advertise "any preference, limitation, or discrimination because of race, color, religion, sex, handicap, familial status, or national origin, or intention to make any such preference, limitation, or discrimination."

We will not knowingly accept any advertising for real estate which is in violation of the law.

All persons are hereby informed that all dwellings advertised are available on an equal opportunity  basis.

Courts have given a broad reading to the FHA in order to fulfill its remedial purpose. See *Trafficante v. Metropolitan Life Ins., Co.*, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972). To this end, courts have recognized that section 3604(c) applies to all publishing mediums, including newspapers, *United States v. Hunter*, 459 F.2d 205 (4th Cir.), cert. denied, 409 U.S. 934, 93 S.Ct. 235, 34 L.Ed.2d 189 (1972), and have allowed parties to establish a violation of section 3604(c) by proving either an actual intent by a defendant to discriminate or by proving that "[t]o the ordinary reader the natural interpretation of the advertisements published in [the newspaper] ... is that they indicate a racial preference...." Id. at 215.  Section 3604(c) makes unlawful certain practices associated with the sale or rental of housing:

To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

27

42 U.S.C. § 3604(c). In 1980, the Department of Housing and Urban Development, ("HUD"), the agency charged with implementing the FHA, promulgated a regulation to "provide guidance" to newspapers and others concerning nondiscrimination in advertising in connection with real estate. 24 C.F.R.§109. Although applying both to the advertising media and to persons placing advertisements, *id.* § 109.16(a)(1) and (2), these regulations do not mandate particular actions by these parties. Rather, HUD sought to balance between the "identification of practices which might be viewed as violations of Title VIII and ... the limitation which the First Amendment may impose on mandatory restrictions relating to the publication of advertising.... [T]he regulation describes examples of advertising practices ... which might be indicative of a violation of (or compliance with) Title VIII." 45 Fed.Reg. 57,102 (Aug. 26, 1980). Further, "[w]hile the practices, etc., cited in the regulation are indices of a standard of conduct to evaluate the existence of discrimination in advertising, they are not intended, *per se,* to establish immutable rules, but to serve as examples of practices, usage, content, etc., which *should* be complied with (or avoided), whichever the case may be." *Id.* (emphasis in original). Mandatory language was intentionally avoided.   In keeping with this policy, HUD stated that the selective use of human models in advertisements "may" be discriminatory:

> Selective advertising may involve an advertising campaign using human models primarily in media that cater to one racial or national origin segment of the population without a complementary advertising campaign that is directed at other groups.

24 C.F.R.§109.25(c). In its comments, HUD stated that this section "is intended to preclude selective use of human models in advertising for the purpose of attracting (or discouraging) certain groups covered by Title VIII with respect to certain housing or neighborhoods." 45 Fed.Reg. 57, 105 (Aug. 26, 1980). In another section, HUD

28

stated:

> If models are used in display advertising campaigns, the models
> should be clearly definable as reasonably representing the majority
> and minority groups in the metropolitan area, both sexes, and, when
> appropriate, families with children. Models, if used, should portray
> persons in an equal social setting and indicate to the general public
> that the housing is open to all without regard to race, color, religion,
> sex, handicap, familial status, or national origin, and is not for the
> exclusive use of one such group.

24 C.F.R.§109.30(b). In explaining this section, HUD noted:

> Civil rights groups commented that models used should reflect, in
> numbers, the exact percentage of various covered groups in the
> population, a suggestion which is clearly unworkable. The term
> "reasonably representing" is intended to assure that models will
> convey a message of general inclusiveness of persons covered by
> Title VIII, not literal display of each minority group.

45 Fed.Reg. 57,105 (Aug. 26, 1980) To prove a violation of § 3604(c), the Plaintiffs
must have established by a preponderance of the evidence that the Defendants
"ma[d]e, print[ed] or publish[ed] or cause[d] to be made, printed or published" the
allegedly offending advertisement or advertisements and that such advertisement or
advertisements "indicate[s]" an improper "preference" or intent to make such a
preference. The words "ma[d]e, print[ed] or publish[ed] or cause[d] to be made,
printed or published" are to be given their ordinary meanings; that is, that a
defendant itself, or through its agents, participated in designing, producing, revising,
selecting, approving or paying for the advertisements. *United States v. Hunter,* 459
F.2d 205, 210 (4th Cir.), *cert. denied,* 409 U.S. 934, 93 S.Ct. 235, 34 L.Ed.2d 189

COMPLAINT
CASE #

(1972). An advertisement "indicates" a preference in violation of the statute if it "suggests to an *ordinary reader* that a particular race is preferred or dispreferred for the housing in question." *Ragin v. New York Times Co.,* 923 F.2d 995, 999 (2d Cir.) (hereinafter "*New York Times* ") (emphasis added), *cert. denied,* 502 U.S. 821, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991); *see also Housing Opportunities Made Equal, Inc. v. Cincinnati Enquirer, Inc.,* 943 F.2d 644, 646 (6th Cir.1991) (hereinafter "*HOME* "); *Fenwick–Schafer v. Sterling Homes Corp.,* 774 F.Supp. 361, 366 (D.Md.1991); *Hunter,* 459 F.2d at 215 (§ 3604(c) violated if "[t]o the ordinary reader the natural interpretations of the advertisements published ... is that they indicate a racial preference"). The "ordinary reader" is "neither the most suspicious nor the most insensitive of our citizenry. Such a reader does not apply a mechanical test to every use of a model of a particular race." *New York Times,* 923 F.2d at 1002.[7] Finally, an ad expresses a "preference" if "it would discourage an ordinary reader of a particular race from answering it." *Id.* at 1000. Real estate advertisements using human models fall within the ambit of § 3604(c). Reasoning that neither the broadly drafted statute nor its legislative history "suggests that Congress intended to exempt from its proscriptions subtle methods of indicating racial preference," the Second Circuit has held that "in some circumstances" an ad using human models of one race to the exclusion of others may indicate a racial preference violative of § 3604(c), regardless of the absence of any facially discriminatory verbal message. *Id.; see also HOME,* 943 F.2d at 647–48 & n. 4 ("discrimination [under the FHA] may occur through words or pictures, and the use of all-white models could be factor in determining whether an advertisement conveys a discriminatory message...."); *Spann v. Colonial Village, Inc.,* 899 F.2d 24, 34–35 (D.C.Cir.), *cert. denied,* 498 U.S. 980, 111 S.Ct. 508, 112 L.Ed.2d 521 (1990); *Fenwick–Schafer,* 774 F.Supp. at 364–66; *Saunders,* 659 F.Supp. at 1058.  In reaching this determination, the Second Circuit drew

30

support from a regulation issued by the Department of Housing and Urban Development ("HUD") promulgated under HUD's authority to enforce the Act. That regulation, the existence of which this court has taken judicial notice, provides:

*Use of human models.* Human models in photographs, drawings, or other graphic techniques may not be used to indicate exclusiveness because of race, color.... If models are used in display advertising campaigns, the models should be clearly definable as reasonably representing majority and minority groups in the metropolitan area.... Models, if used, should portray persons in an equal social setting and indicate to the general public that the housing is open to all without regard to race, color ..., and is not for the exclusive use of such group.

24 C.F.R. §109.30(b). The regulations of which this section is a part were designed to "provide guidance" to advertisers and are required to be applied only in HUD proceedings. The regulations do not create "fixed and immutable rules to determine whether an advertisement is discriminatory." *HOME,* 943 F.2d at 647. Nevertheless, a court may consider the regulations as examples of advertising that HUD considers might indicate a racial preference, limitation or discrimination to the ordinary reader. *See HOME,* 943 F.2d at 647–48 (citing legislative history at 45 Fed.Reg. 57,102 (Aug. 26, 1980)); *see also New York Times,* 923 F.2d at 1000 n. 1. Proof that the advertiser had a discriminatory intent, although possibly relevant to determining the message conveyed, is not necessary: the touchstone is the message naturally inferred by the ordinary reader. *New York Times,* 923 F.2d at 1000; *see also Soules v. United States Dep't of Hous. & Urban Dev.,* 967 F.2d 817 (2d Cir.1992) (violation of § 3604(c) may be established either by proof that ad indicates impermissible racial preference to ordinary reader *or* by proof of actual intent to discriminate).

56.     In the present case, Defendants had the opportunity, based upon either the large number of models used in an advertisement or the numerous advertisements

31

placed by an advertiser with a particular publisher, to include models of persons with handicaps, a protected group under the FHA. Plaintiff Roy Gash alleges Defendant engages in disparate treatment with respect to Defendants' internet Notices, Statements, and Advertisements as to the amenities being offered to people without disabilities and people with disabilities.   Plaintiff can establish liability based on the "ordinary reader" standard. Defendants' Internet advertising uses selective media or content exclusively to cater to the majority population without disabilities. Further, the said advertising uses catch words, symbols or logotypes and colloquialisms that suggest a preference for people without disabilities. Moreover, the selective placement of the equal housing opportunity logo suggests a preference for people without disabilities. Further, none of the human models used in the said advertising have a known disability. In addition, the said advertising fails to conform to the advertising requirements delineated in Appendix I, Tables I-III of 24 CFR 109. Defendants had the opportunity, based upon either the large number of models used in an advertisement or the numerous advertisements placed by an advertiser with a particular publisher, to include models of a protected group.

57.   Plaintiff Roy Gash alleges that Defendants made, printed, or published, or caused to be made printed, or published notices, statements, or advertisements ("NSA") that suggest to an ordinary reader a preference to attract tenants without disabilities.  Plaintiff Roy Gash alleges that the internet NSA is a primary method that potential renters learn information about the amenities offered at apartments and their policies practices and procedures.  Plaintiff Roy Gash alleges that Defendants existing advertisements on websites is directed toward persons who do not have disabilities.

58.   Plaintiff Roy Gash alleges that Defendants notices, statements, and internet advertisements suggests to an ordinary reader that Defendants have a preference to

attract tenants without handicap or disabilities and the persons associated with them.
Plaintiff Roy Gash alleges Defendant engages in discriminatory treatment as against
Plaintiff Roy Gash with respect to Defendants internet Notices, Statements, and
Advertisements, as to the amenities being offered to people without disabilities and
people with disabilities.   Defendants notices, statements, and advertisements
("NSA") deterred Plaintiff Roy Gash and other members of the disability public
from going to or renting Defendants apartments.    Defendant's NSA fail to provide
any information as to any alternative methods of access to the inaccessible features.
Plaintiff Roy Gash alleges that the present Defendant landlord uses its NSA to
inform potential tenants about the apartments so they do not need to physically visit
the place to make housing choices. However, prospective tenants with disabilities are
forced to call or physically visit a place to assess the physical access amenities,
policies, procedures that affect their disabilities.  Due to Defendant's discriminatory
notices, statements, and advertisements, Plaintiff Roy Gash suffered disparate
discriminatory treatment due to Defendant's failure to comply with the FHA in that
Plaintiff Roy Gash needed to physically visit the property to ascertain its physical
accessibility, and its leasing policies and procedures that affect Plaintiff Roy Gash as
a person with disabilities.  As a result, Plaintiff Roy Gash also suffered the denial of
equal access prohibited under Plaintiff's ADA claims as stated above.   Additionally,
Plaintiff Roy Gash alleges Defendant engages in disparate treatment with respect to
Defendants internet Notices, Statements, and Advertisements as to the amenities
being offered to people without disabilities and people with disabilities and Plaintiff
Roy Gash suffered discriminatory treatment, including but not limited to the
following examples. Under the FHA and ADA, a companion service dog is not a pet.
The FHA and ADA prohibit any extra charges for companion or service dogs.
Defendant landlord expects prospective tenants to obtain information about its

33

apartments from its internet NSAs, yet its companion and service animal policy is not available on the internet.  Plaintiff Roy Gash potentially will also need to personally undertake the expense to modify any rental unit to accommodate his disabilities including, but not limited to, such issues as providing accessible parking in close proximity to a potential rental unit, grab bars in the restroom, installation of accessible sink and shower faucets, potentially replacing door operating hardware with accessible hardware, potential ramp at the rental unit entrance door, etc. Additionally, Defendant's apartment common areas may need to be reasonably modified by Plaintiff Cross, ie such as any common area grill spaces, etc. Defendant's NSA do not provide any information as to their reasonable modification or accommodation policies, if any.

59.     Also, Defendant's internet website NSA are not accessible visually since one is not able to click and increase the NSA font size to make it more readable for persons with impaired vision.  Additionally, Defendant's internet NSAs fail to be offered in alternative methods.  The offices and common areas offer services. Even if the facilities were constructed before March 13, 1991 and the physical barriers are not readily achievable to remove, the services offered in the facilities must be accessible.

60.  Plaintiff Roy Gash alleges Defendant's internet and other Notices, Statements, and Advertisements do not state the accessible amenities at all and an ordinary person would conclude it is only directed towards persons without disabilities. Plaintiff alleges that Defendant's use of the "equal housing opportunity statement" is also misleading. Defendant's apartment property is not accessible. Prospective tenants with disabilities including Plaintiff Roy Gash are forced to physically visit a place to assess the access amenities while persons without disabilities do not.  All the above facts stated herein have and did have a discriminatory impact on Plaintiff Roy

34

COMPLAINT
CASE #

Gash and on the disability community in violation of 42 U.S.C. § 3604(c), § 3604(f)(1-2).  Plaintiff Roy Gash personally experienced the discriminatory conduct as stated above in violation of the FHA.

61.    Wherefore, Plaintiff was injured, and prays for damages and other relief as hereinafter stated.

CLAIM III:  Discrimination In Violation of 42 § 3604(f)(1)

62.    Based on the facts plead at ¶¶ 9 – 17, ¶¶50 -60 above and elsewhere herein this complaint, Plaintiff Roy Gash suffered discrimination in violation of this FHA section.  Defendant caused Plaintiff Roy Gash to suffer disparate impact discrimination.  The relevant FHA statute states it is unlawful to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of (A) that buyer or renter; (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or… §3604(f)(1) [emphasis added].   The very recent U.S. Supreme Court decision upheld the unanimous rule, of all nine Circuit Courts of Appeal that had previously addressed it, that the FHA statutory scheme permits disparate impact claims, and that those type of claims also do not require a showing of intent.  *Texas Dept. of Housing and Community Affairs v Inclusive Communities Project*, 135 S.Ct. 2507, 2519 (2015) [ the statutory phrase ''to otherwise make unavailable or deny'' – the very same statutory language as also used in §3604(f)(1)].  Our Ninth Circuit Court of Appeals previously had reached that same conclusion.  *Halet v. Wend Investment Co.,* 672 F.2d 1305, 1311 (9th Cir 1982).    Based on the facts plead at ¶¶ 9 – 17, ¶¶50 -60 above and elsewhere herein this complaint, Plaintiff Gash suffered discrimination in violation of FHA §3604(f)(1).  Wherefore, Plaintiff was injured, and prays for damages and other relief as hereinafter stated.

35

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FOURTH CAUSE OF ACTION: Violation of California Fair Housing Act

63.       Based on information, belief and the facts stated at ¶¶ 9 – 17, ¶¶50 -60
above and elsewhere in this complaint, Plaintiff alleges that Defendants violated the
California Fair Employment and Housing Act.  Plaintiffs allege that Defendants
failed to design and construct a covered multifamily dwelling in a manner that allows
access to and use by disabled persons by providing, at a minimum, the following
features in violation of California Government Code, Title 2, §12955.1: (1) All
covered multifamily dwellings shall have at least one building entrance on an
accessible route, unless it is impracticable to do so because of the terrain or unusual
characteristics of the site. The burden of establishing impracticability because of
terrain or unusual site characteristics is on the person or persons who designed or
constructed the housing facility. (2) All covered multifamily dwellings with a
building entrance on an accessible route shall be designed and constructed in a
manner that complies with all of the following: (A) The public and common areas
are readily accessible to and usable by persons with disabilities. (B) All the doors
designed to allow passage into and within all premises are sufficiently wide to allow
passage by persons that use mobility devices.  (C) All premises within covered
multifamily dwelling units contain the following features of adaptable design: (i) An
accessible route into and through the covered dwelling unit. (ii) Light switches,
electrical outlets, thermostats, and other environmental controls in accessible
locations. (iii) Reinforcements in bathroom walls to allow later installation of grab
bars around the toilet, tub, shower stall, and shower seat, where those facilities are
provided. (iv) Usable kitchens and bathrooms so that an individual in a wheelchair
can maneuver about the space.  Defendants failed to design and construct 10 percent
of the multistory dwelling units in buildings without an elevator that consist of at

36

COMPLAINT
CASE #

least four condominium dwelling units or at least three rental apartment dwelling units in a manner that incorporates an accessible route to the primary entry level entrance and that meets the requirements of paragraph (2) of subdivision (a) with respect to the ground floor, at least one bathroom on the primary entry level and the public and common areas. Any fraction thereof shall be rounded up to the next whole number.

64.     Based on information, belief and the facts stated above, Plaintiffs alleges that Defendants refused to make reasonable accommodations in rules, policies, practices, or services in violation of CA Government Code 12925, when these accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling.

65.     Wherefore, Plaintiff was injured, and prays for damages and relief as hereinafter stated.

## DEMAND FOR JUDGMENT FOR RELIEF:

A.     For injunctive relief pursuant to 42 U.S.C. § 12188(a) and 42 U.S.C. 3613(c). Pursuant to 42 U.S.C. § 12188(a), Plaintiff requests this Court enjoin Defendants to remove all architectural and communication barriers in, at, or on their facilities including without limitation violations of 42 U.S.C. § 12188(a).  Plaintiff does not seek injunctive relief pursuant to Cal. Civil Code §55 and Plaintiff does not seek attorneys' fees pursuant to Cal. Civil Code §55.  Plaintiff does not seek any relief at all pursuant to Cal. Civil Code §55.

B.     For actual damages pursuant to 42 U.S.C. 3613(c), Cal. Civil Code §§ 52 or 54.3;

C.     For $4,000 in minimum statutory damages pursuant to Cal. Civil Code § 52 for each and every offense of Civil Code § 51, pursuant to Munson v. Del Taco, (June 2009) *46 Cal. 4th 661*;

D.     In the alternative to the damages pursuant to Cal. Civil Code § 52 in Paragraph

37

COMPLAINT
CASE #

C above, for $1,000 in minimum statutory damages pursuant to Cal. Civil Code § 54.3 for each and every offense of Civil Code § 54.1;

E.      For attorneys' fees pursuant to 42 U.S.C. § 12205, 42 U.S.C. 3613(c)(2), and Cal. Civil Code §§ 52, 54.3;

F.      For treble damages pursuant to Cal. Civil Code §§ 52(a) or 54.3(a);

G.      A Jury Trial and;

H.      For such other further relief as the court deems proper.

Respectfully submitted:

                                        LAW OFFICES OF DAVID C. WAKEFIELD

Dated: October 31, 2016
                              By:    /s/David C. Wakefield
                                        DAVID C. WAKEFIELD, ESQ
                                        Attorney for Plaintiff

COMPLAINT
CASE #